### ARSENE GODIN *vs.* HENRY C. NIEBUHR.

Hampden.    September 23, 1920. — October 14, 1920.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Unlawful Interference.    Damages,* In tort.

The harmful circulation of libellous statements for the purpose of injuring the business of another is an unlawful interference with such other person's property rights for which the wrongdoer is answerable in an action of tort.

The handing out to passers-by in front of a barber shop by the business agent and secretary of a local barber's union of printed cards stating that the proprietor was "Unfair to Organized Labor. He refuses to employ Union Barbers or conduct a Union Barber Shop," where it appears that, of three employees in the shop, two were members of the union in good standing and the third had a union book, duly stamped, showing receipt of dues, but, under some alleged law of the international union, not known to the proprietor of the shop, was, in the opinion of the business agent and secretary, "readmitted" at a wrong local union, may be found to be an unlawful and unjustifiable interference with the business of the proprietor of the shop for which an action of tort may be maintained.

At the trial of an action brought under the circumstances above described, the plaintiff testified that the distribution of the cards hurt his business, that because of them people that used to patronize him stayed away and that the damage he sustained thereby was about $800 or $900. There was no evidence indicating his weekly earnings nor showing how he sustained the damages to which he testified nor how an estimate of his damages could be made, nor the names or identity of customers who refrained from patronizing the shop. The jury found for the plaintiff in the sum of $220, and the judge reported the case for determination by this court. *Held,* that

(1) For the invasion of his rights the plaintiff was entitled to at least nominal damages;

(2) There was evidence of specific damages;

(3) The jury might well have inferred that the intended and natural result of the defendant's wrongdoing was substantially to injure the plaintiff's business.

TORT, with a declaration containing a third count based upon an unlawful interference with the plaintiff's business as the proprietor of a barber shop. Writ dated November 16, 1915.

In the Superior Court the action was tried before *Irwin,* J. The material evidence on the question of liability is described in the opinion. It was stated in the report by the trial judge that the plaintiff testified in direct examination, on the question of damages, "That because of the distribution of the cards customers were kept away. That distribution of the cards hurt his

business. That people remained or stayed away that used to patronize him because of these cards. That the damage he sustained thereby was about $800 or $900. . . . There was no testimony indicating the weekly earnings of the plaintiff in his business after the trouble began, nor showing how the plaintiff sustained the damage of $800 or $900, and there was no evidence from which an estimate of the damage alleged to have been sustained could be made. There was no evidence of the names or identity of any customers who refrained from patronizing the plaintiff's shop as a result of the distribution of the cards, nor any evidence, other than that of the plaintiff which herebefore appears, that any customers refrained from patronizing the plaintiff as a result of the distribution of cards by the defendant or by any other person, or that if he lost any customers they refrained from patronizing him because the defendant made such distribution, or some other person."

The jury found for the plaintiff on the third count of the declaration in the sum of $220, and the judge thereupon ordered a verdict for the defendant and reported the case for determination by this court, with the stipulation that, if the evidence warranted the finding for the plaintiff, it was to stand; otherwise, judgment was to be entered on the verdict ordered for the defendant.

The case was submitted on briefs.

*C. L. Young,* for the plaintiff.

*G. D. Cummings, G. F. Leary & P. E. Tierney,* for the defendant.

DE COURCY, J. The right to conduct a lawful business is a property right, protected by the common law and guaranteed by the organic law of the State. See *L. D. Willcutt & Sons Co.* v. *Driscoll,* 200 Mass. 110, 117. One who interferes with another's business, for the purpose of compelling present or prospective customers to withhold their patronage, is responsible for the harmful consequences, unless he shows a legal justification for such interference. And to constitute such justification, it must appear not only that the interference was in pursuance of a lawful purpose, like trade competition, but that it was carried on by lawful means. The harmful circulation of libellous statements for the purpose of injuring the business of another, is a malicious interference with that other's property rights, for which the wrongdoer is answerable in damages. *M. Steinert & Sons Co.* v. *Tagen,* 207

Mass. 394. *Burnham* v. *Dowd*, 217 Mass. 351. *Harvey* v. *Chapman*, 226 Mass. 191. L. R. A. 1917 E 391, note. *Martineau* v. *Foley*, 231 Mass. 220. 1 L. R. A. (N. S.) 1149, note.

These established principles are applicable to the facts disclosed by this record. The plaintiff conducted a barber shop and pool room in Springfield. On Saturday preceding Memorial Day, 1915, the defendant, in front of the plaintiff's shop, handed to numerous passers-by certain cards, on which was printed the following:

> "ARSENE GODIN'S BARBER SHOP
> and Pool Room, 227 Main Street
> Are Unfair to Organized Labor.
> He refuses to employ Union Barbers
> or conduct a Union Barber Shop."

The meagre record does not disclose the purpose which actuated the defendant. We infer that he was acting on behalf of the local barbers' union, of which he was business agent and secretary. What trade dispute there was, if any, between the plaintiff and the union, is left largely to conjecture.

However, the main question is, whether there was evidence warranting a verdict for the plaintiff on the third count; and even if we assume that the defendant's purpose was a lawful one, nevertheless there was evidence for the jury that the means he employed were unlawful. The statements printed on the cards, as above set forth (for we need not consider the other circulars referring to shop cards), might well be found to be false and malicious. It appears that in truth the shop was conducted under union regulations. It is not denied that two of the three employees were members of the union in good standing. Apparently the defendant claimed that the third employee, Sheltra, under some alleged law of the international union, "should have been readmitted at Springfield, instead of Portland, Maine." Sheltra had a union book, duly stamped, showing receipt of dues. If there was any question in the union as to his good standing, there is no evidence that the plaintiff was informed of it, or was requested to discharge Sheltra. In short, the jury could find that the cards circulated by the defendant for the purpose of injuring the plaintiff's business, were libellous statements and hence without legal justification.

The evidence as to damages was scanty and indefinite; but this was partially due to the practical difficulty of showing what customers refrained from patronizing the plaintiff in consequence of the cards distributed by the defendant. For the invasion of his legal rights the plaintiff was entitled to at least nominal damages. And the jury not only had evidence of specific damage, but might well infer that the intended and natural result of the defendant's wrongdoing was to substantially injure the plaintiff's business. It is to be presumed that this issue was presented to the jury with proper instructions. *Burnham* v. *Dowd*, 217 Mass. 351, 360. *Exchange Telegraph Co. Ltd.* v. *Gregory & Co.* [1896] 1 Q. B. 147.

It may be added that the "peaceful persuasion" act (St. 1913, c. 690), does not purport to excuse unlawful conduct, such as the publication of libellous matter coercive in its nature.

In accordance with the report, the verdict for the plaintiff is to stand; and it is

*So ordered.*