OLYMPIA OPERATING COMPANY *vs.* CHARLES J. COSTELLO & others.

Hampden.   September 17, 1931. — January 25, 1932.

Present: RUGG, C.J., CROSBY, SANDERSON, & FIELD, JJ.

*Unlawful Interference.   Labor Union.   Strike.*

In a suit in equity by the proprietor of a theatre to enjoin a labor union from picketing before the theatre with placards, it appeared that the picketing was done with placards containing the statement: "UNION MEN AND WOMEN DO NOT PATRONIZE THIS THEATER THIS THEATER UNFAIR TO THE BILLPOSTERS UNION. . . . UNION BILLPOSTERS LOCKED OUT.   UNION SYM-PATHIZERS STAY AWAY"; that thereby the business of the plaintiff was interfered with to an appreciable extent; that the plaintiff had employed members of the union to do outside billposting, but never had employed any of them to "change the lobby," which was done by the plaintiff's own poster artist and a helper; that owing to a refusal by the plaintiff to employ members of the union to "change the lobby," the union called a strike of those employed by the plaintiff in outside posting.   A decree for the plaintiff was entered and the defendants appealed.   *Held,* that the statement in the placards, "union billposters locked out," being false, the use of such false statement was an unlawful means of conducting a strike and warranted the decree of injunction.

*Whether* the statement in the placards that the theatre was unfair to the billposters' union was untrue and therefore unlawful was not considered.

Section 24 of G. L. c. 149, being limited in its application to a lawful strike lawfully conducted, had no bearing in the suit above described.

BILL IN EQUITY, filed in the Superior Court on March 14, 1931, and described in the opinion.

The suit was referred to a master.   Material facts found by the master are stated in the opinion.

The suit was heard by *Whiting,* J., by whose order there were entered an interlocutory decree confirming the master's report, and a final decree enjoining the defendants, "members of Local No. 15 International Association of Billposters and Billers, its and their officers, agents, servants, attorneys and employees, from placing the name of

the plaintiff or the Paramount or Broadway Theaters in Springfield upon any sign, card, placard or other display so as to induce or attempt to induce persons not to patronize either of the above named theaters of the petitioner; from picketing before the theaters above named; from parading before the petitioner's premises above referred to with signs such as described in the master's report or other signs of similar purport; from interfering by word of mouth, printed articles or otherwise with the patrons and customers of the petitioner so as to induce them not to patronize the petitioner's theaters above named."

The defendants appealed from the final decree.

*J. E. Kerigan*, for the defendants.

*C. H. Beckwith*, for the plaintiff.

CROSBY, J.  This is a bill in equity brought by a Massachusetts corporation engaged in the business of operating theatres in several cities in this Commonwealth, including the Paramount and Broadway theatres in the city of Springfield, against the members of a voluntary association or labor union known as Local No. 15 International Association of Billposters and Billers (herein called the Local), and against other members of the Local whose names are alleged to be unknown to the plaintiff.  The bill is brought to restrain the defendants from conspiring to injure the plaintiff in its business and from other acts set forth in the prayers of the bill.  The case was heard by a master whose report was confirmed, and a final decree was entered restraining the defendants from picketing before the Paramount or the Broadway Theater in Springfield, and from attempting to induce persons not to patronize the theatres by signs, cards, placards or otherwise.  The case is before this court upon an appeal from that decree.

The master made the following findings: The Paramount Theater has been operated by the plaintiff since it was opened in September, 1929.  Members of the union were employed about a month before the opening to do the outside billposting and billing, and thereafter they were employed to do such advertising work, except during the summer and fall of 1930, until December of that year.

Shortly after the opening of the theatre a discussion arose between the representatives of the plaintiff and the Local as to the right of the members so employed to "change" the lobby. The phrase "to change the lobby" means the taking down of the advertising matter in the lobby of the theatre and the setting up of new advertising matter at times when the program of the theatre is changed. In December, 1929, a member of the Local was told by the plaintiff's then district manager to refrain from changing the lobby, and was threatened by him with removal from the lobby by the police if he persisted in making such change. From the opening of the Paramount Theater on September 27, 1929, to the following December, this member was forbidden to change the lobby which he had been doing in conjunction with the plaintiff's artist.

It is further found by the master that this lobby work at the Paramount Theater was not within the scope or purpose for which this member of the union was hired, as stated to him by the plaintiff's representative at the time of such hiring, nor was he at any time requested to do this work by any authorized representative of the plaintiff. There was no evidence that he was paid for such work, as such, by way of overtime or otherwise; but he was employed daily during working hours to put up and distribute outside advertising for the theatre, for which he was paid.

Since about August 14, 1929, the plaintiff has employed a poster artist, who prepares the advertising matter to be put up in the lobby; he has a helper, and the advertising matter is put in the lobby each Friday night when the pictures are changed in the theatre. Many meetings between the plaintiff's manager and representatives of the Local were held between September, 1929, and December, 1930, without result. At the request of representatives of the Local a meeting was held on March 10, 1931. At this meeting a copy of a proposed agreement was submitted to representatives of the plaintiff with a statement by an attorney of the Local, in substance, that its terms were not final but might be changed to conform to any mutual agreement reached. The agreement provided that the

plaintiff employ members of the union to perform the duties of advertising agents at its theatres, and that such members so employed should do all the changing in the lobbies, and also the outside billing and posting. A wage scale was included in the proposed agreement. At a subsequent meeting, held March 13, 1931, the plaintiff's managers refused to enter into the agreement with the Local or to allow its members to change the lobbies or to do lobby work. It was further found that the plaintiff in good faith refused to allow members of the Local to do the lobby work at the Paramount and Broadway theatres because of the designing and setting up of the advertising displays in the Paramount Theater lobby by its poster artist and his helper, and because of the further fact that other employees of this theatre and of the Broadway Theater were competent and able to perform this work; and that the plaintiff's discharge of the members of the Local was in good faith for substantially the same reasons, and not because of such membership.

At the conclusion of the meeting on March 13 notice was given the plaintiff's managers by the business agent of the Local that the three members thereof, then in the plaintiff's employ, would stop work at the end of two weeks. On the evening of the same day two members of the Local began picketing in front of the Paramount Theater by passing back and forth on the sidewalk, each with a printed placard or sign, attached to a stick, on which was printed the following: "UNION MEN AND WOMEN DO NOT PATRONIZE THIS THEATER THIS THEATER UN-FAIR TO THE BILLPOSTERS UNION Affiliated with the Springfield Central Labor Union. UNION BILL-POSTERS LOCKED OUT. UNION SYMPATHIZERS STAY AWAY." The master found that the picketing to some extent interfered with the business of the Paramount Theater and to some appreciable extent affected the receipts thereof; and he stated that "As a fair inference from the facts hereinabove set forth as to such picketing by members of said local, I find that the conduct of such picketing if continued would further injuriously affect the plaintiff in

the conduct of the business of its said theaters, and in the financial receipts therefrom."

It has long been settled that laborers have a right to organize as labor unions to promote their welfare, safety and happiness. To utilize such organizations by prosecuting a strike is an exercise of the common law right of every citizen to pursue his calling whether of labor or business as he thinks necessary. This right, however, is limited by the exercise of the same right in all other citizens. "The right to conduct a lawful business is a property right, protected by the common law and guaranteed by the organic law of the State. . . . One who interferes with another's business, for the purpose of compelling present or prospective customers to withhold their patronage, is responsible for the harmful consequences, unless he shows a legal justification for such interference. And to constitute such justification, it must appear not only that the interference was in pursuance of a lawful purpose, like trade competition, but that it was carried on by lawful means. The harmful circulation of libellous statements for the purpose of injuring the business of another, is a malicious interference with that other's property rights, for which the wrongdoer is answerable in damages." *Godin* v. *Niebuhr*, 236 Mass. 350, 351.

For some time before the Paramount Theater was opened until the strike was instituted the plaintiff had employed members of the union to do all the necessary outside billposting and billing. The billposting in the lobby had been done by a poster artist so called and his helper who were in the regular employment of the plaintiff. The strike was instituted because of the refusal of the plaintiff to sign the agreement providing that all the billposting should be done by members of the union. If we assume without deciding that the strike was for a justifiable purpose, it is manifest that the methods pursued in conducting it were illegal. The statement on the placards carried on the sidewalk in front of the plaintiff's theatre "UNION BILLPOSTERS LOCKED OUT" was false. The defendants were not locked out. There was no evidence to substantiate that

charge. The findings of the master and the undisputed evidence showed that previous to the strike members of the Local were doing all the outside billposting, and the strike was called because of the refusal of the plaintiff to permit the members of the Local to do the inside billposting. It follows that the false statement that union billposters were locked out was an unlawful means of conducting the strike. In effect it amounted to the boycotting of the plaintiff's business by the defendants causing it loss and was plainly unlawful. *Burnham* v. *Dowd,* 217 Mass. 351. *New England Cement Gun Co.* v. *McGivern,* 218 Mass. 198. *Harvey* v. *Chapman,* 226 Mass. 191. *Godin* v. *Niebuhr,* 236 Mass. 350. In view of the conclusion reached we need not consider whether the statement on the placards that the theatre was unfair to the billposters' union was untrue and therefore unlawful. The decision in *Pickett* v. *Walsh,* 192 Mass. 572, upon which the defendants rely, is plainly distinguishable from the case at bar. See *Folsom Engraving Co.* v. *McNeil,* 235 Mass. 269, 277, 278.

G. L. c. 149, § 24 is not applicable to the present case. It is limited to a lawful strike lawfully conducted. *Rice, Barton & Fales Machine & Iron Foundry Co.* v. *Willard,* 242 Mass. 566, 573.

*Final decree affirmed with costs.*