SAMUEL SIMON *vs.* PHILIP SCHWACHMAN & others.

Suffolk.     May 5, 6, 1938. — December 16, 1938.

Present: LUMMUS, QUA, DOLAN, & COX, JJ.

*Unlawful Interference. Labor. Labor Union. Picketing. State Labor Relations Act. Equity Jurisdiction,* To enjoin unlawful interference, Labor disputes, Retention for assessment of damages. *Equity Pleading and Practice,* Injunction.

Neither the provisions of St. 1935, c. 407, nor those of St. 1937, c. 436, make lawful the peaceful picketing by a labor union of a shop and its business for the purpose of compelling the proprietor, through loss or fear of loss of public patronage, to enter into a contract with the union under which he would recognize the union as a bargaining agency for his employees and would generally employ only members of the union, where no dispute existed between the proprietor and his employees, who were nonunion, even if it be assumed that the circumstances showed a "labor dispute" as defined in § 20C, added to G. L. c. 149 by St. 1935, c. 407, § 1.

On the record it appeared that all of the conditions described in § 9A added to G. L. (Ter. Ed.) c. 214 by St. 1935, c. 407, § 4, as prerequisites to the granting of permanent injunctive relief in a labor dispute were met in a suit in equity to enjoin a labor union from peaceful picketing for an unlawful purpose.

A suit in equity for injunction of members of a labor union, pending in this court on appeal from a decree of dismissal, upon this court being informed that acts sought to be enjoined had ceased, was ordered retained for assessment of damages sustained by the plaintiff from acts of the defendants adjudged by this court to have been unlawful.

BILL IN EQUITY, filed in the Superior Court on March 30, 1938.

The suit was heard by *Goldberg,* J., who ruled "that the controversy in the instant case is a 'labor dispute' within the meaning of St. 1935, c. 407, and that the case involves or grows out of a labor dispute"; and by his order a final decree dismissing the bill was entered.     The plaintiff appealed.

*E. Miller, (S. Miller & J. M. Weisberg* with him,) for the plaintiff.

*A. F. Reel, (B. Feinberg* with him,) for the defendants.

LUMMUS, J. A retail dealer in meat brings this bill against the officers and members of a voluntary association known as Amalgamated Meat Cutters and Butcher Workmen of North America Local Union No. 618, sometimes called the Hebrew Butchers Union Local No. 618, which is affiliated with the American Federation of Labor.

The plaintiff operates a small shop with the aid of three employees. None of them is a member of any labor union. Their wages are somewhat lower, and their hours of labor somewhat longer, than the wages and hours which the union seeks to maintain. There is not, and never has been, any dispute between the plaintiff and his employees.

In March, 1937, the defendant Hamlin became the business agent of the defendant labor union. He tried to unionize the various small butcher shops of the same kind and in the same district, as the plaintiff's shop. In this he was successful in about twenty instances. After July 1, 1937, Hamlin tried to induce the plaintiff to hire a union member as one of his employees, but without success. He told the plaintiff that if they did not come to a "peaceful adjustment" the union "would have to do something." On March 22, 1938, with the authority of the union, Hamlin told the plaintiff that if the "matter" should not be adjusted the union would picket the plaintiff's shop; and picketing began on March 26, 1938. Since that day picketing has been continued during business hours.

The method of picketing is peaceable and orderly. Only four or five pickets remain in the neighborhood, and only one is active at a time. The others remain near enough to be available to take turns as the active picket. The active picket carries no sign, banner or placard. See *Commonwealth* v. *Haffer*, 279 Mass. 73. He walks back and forth on the sidewalk in front of and ten or twelve feet from the plaintiff's shop, saying "This store is unfair to organized labor," or "Do not patronize this store." There has been no disturbance, no threat, intimidation or coercion, no violence, no gathering of a crowd, and no interference with customers desiring to enter the shop. Occasionally the picket has said, "Do not cross the picket line." If spoken

in a menacing manner or accompanied by a show of force, the words used might be found to carry a flavor of intimidation, rather than of peaceful persuasion. But taken by themselves they do not, and intimidation is expressly negatived by the findings. It is unnecessary in this case to consider whether the expression, "This store is unfair to organized labor," ought to be considered a possibly untrue statement of fact making the picketing unlawful if the statement is untrue, or a technical expression meaning nothing more than that the proprietor is resisting the demands of some labor union. *Martin* v. *Francke*, 227 Mass. 272. *Godin* v. *Niebuhr*, 236 Mass. 350. *Olympia Operating Co.* v. *Costello*, 278 Mass. 125, 130. *Cinderella Theater Co. Inc.* v. *Sign Writers' Local Union No. 591*, 6 Fed. Sup. 164, 172. *J. F. Parkinson Co.* v. *Building Trades Council*, 154 Cal. 581, 592. *Nann* v. *Raimist*, 255 N. Y. 307, 317–318. *J. H. & S. Theatres, Inc.* v. *Fay*, 260 N. Y. 315. The plaintiff's business has decreased since the picketing began, "because of the natural disinclination, or fear, of certain people to enter a store which is being picketed."

The defendants intend to continue the picketing until the plaintiff will sign an agreement with the union. The union and the individual defendants harbor no malice against the plaintiff. Neither do they desire to hurt him or his business, except as a means to an end. The purpose of the union is to bring pressure upon the plaintiff to compel him to enter into a contract with the union under which the plaintiff would recognize the union as the bargaining agency for his employees, and would, except under certain conditions, employ only members of the union. In other words, the object sought is a closed shop.

The question is, whether peaceful picketing for the purpose of compelling the plaintiff, through loss or fear of loss of public patronage, to enter into such a contract with a labor union, is lawful.

Prior to the legislation of 1935, plainly it was not lawful in this Commonwealth. This the defendants do not deny. We may start with propositions that seemingly are undisputed. Both the right to labor and the right to carry

on business are liberty and property. Interference with them is unlawful unless justification is shown. *Walker* v. *Cronin,* 107 Mass. 555. *Vegelahn* v. *Guntner,* 167 Mass. 92, majority opinion, and dissenting opinion of Holmes, J. *Plant* v. *Woods,* 176 Mass. 492, both opinions. *Truax* v. *Corrigan,* 257 U. S. 312, all opinions. *Commonwealth* v. *Strauss,* 191 Mass. 545. *Wyeth* v. *Cambridge Board of Health,* 200 Mass. 474, 478. *Minasian* v. *Osborne,* 210 Mass. 250. *Commonwealth* v. *Libbey,* 216 Mass. 356. *Cornellier* v. *Haverhill Shoe Manufacturers' Association,* 221 Mass. 554, 559–560. *Bogni* v. *Perotti,* 224 Mass. 152. *Godin* v. *Niebuhr,* 236 Mass. 350. *A. T. Stearns Lumber Co.* v. *Howlett,* 260 Mass. 45, 56–59. *Quinn* v. *Leathem,* [1901] A. C. 495.

Undisputed also is the proposition, based upon sound public policy, that workmen have a common law right to strike, that is, to combine to cease work, for the purpose of coercing their employer into providing higher wages, shorter hours and better conditions of employment. As early as 1842, in the leading case of *Commonwealth* v. *Hunt,* 4 Met. 111, this court held that an indictment for conspiracy, alleging in substance "that the defendants and others formed themselves into a society, and agreed not to work for any person, who should employ any journeyman or other person, not a member of such society, after notice given him to discharge such workman" (page 128), did not charge either an illegal object or illegal means. In that case, for the first time, it is believed, the general right of workmen, when free from valid contractual obligation, to strike against their employer, was established. It has never been challenged since.

Picketing for the purpose of peacefully advising workmen and the public that a strike or trade dispute exists, in the hope of gaining sympathy expressed in a refusal of service and a withdrawal of patronage until the matter should be settled, originally was deemed, it seems, an illegal means of conducting a strike or other trade dispute. *Vegelahn* v. *Guntner,* 167 Mass. 92, 98–100. Chief Justice Field and Mr. Justice Holmes dissented on this point.

Pages 103, 105. Of course violence or threats of violence must be outlawed in any country that claims civilization. But G. L. (Ter. Ed.) c. 149, § 24, first enacted as St. 1913, c. 690, and amended by St. 1933, c. 272, made it lawful to persuade or attempt to persuade any person to pursue any line of conduct which he has a right to pursue, unless the persuasion or attempt to persuade is accompanied by injury or threat of injury to the person persuaded or by disorder or unlawful conduct, or is a part of an unlawful or actionable conspiracy. In a lawful trade dispute, it was declared by the amendment of 1933 to be lawful to attend at any place where the person or persons persuading or attempting to persuade may lawfully be, "for the purpose of peacefully obtaining or communicating information or of so persuading or attempting to persuade." Picketing in trade disputes is thus legalized, under the statutory conditions. But it is settled that the statute gives protection in such cases only where there is a lawful trade dispute lawfully conducted. *Harvey* v. *Chapman,* 226 Mass. 191, 195. *Godin* v. *Niebuhr,* 236 Mass. 350, 353. *United Shoe Machinery Corp.* v. *Fitzgerald,* 237 Mass. 537, 544. *Samuel Hertzig Corp.* v. *Gibbs,* 295 Mass. 229, 231. See also *American Steel Foundries* v. *Tri-City Central Trades Council,* 257 U. S. 184, 203 *et seq.; Wise Shoe Co. Inc.* v. *Lowenthal,* 266 N. Y. 264; *Goldfinger* v. *Feintuch,* 276 N. Y. 281, 116 Am. L. R. 477; 35 Mich. Law Rev. 73.

In this case the acts of the defendants are not justifiable under the common law of this Commonwealth even with the peaceful persuasion act added, because there is no lawful trade dispute recognized by that law. By that law, the right to strike and maintain pickets against an employer is deemed the right of his employees only. Labor unions and other persons helping striking employees do so only in the right, and for the benefit, of those employees. Each employer and his employees constitute a unit within which a trade dispute must be found in order that picketing and other normally lawful methods of conducting a strike may be employed. Only where a labor union itself has contractual relations with an employer, as by an agreement

for a closed shop, may the union take coercive action in its own right. *Hoban* v. *Dempsey*, 217 Mass. 166. *Tracey* v. *Osborne*, 226 Mass. 25. *Shinsky* v. *O'Neil*, 232 Mass. 99. *Smith* v. *Bowen*, 232 Mass. 106. *Goyette* v. *C. V. Watson Co.* 245 Mass. 577. *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 61, 65. Compare *American Steel Foundries* v. *Tri-City Central Trades Council*, 257 U. S. 184, 208 *et seq.* The necessity of a lawful trade dispute is illustrated in cases where one once existed but has ceased to exist. When a lawful strike has become merely nominal, without substantial effect upon the business of the employer or genuine hope of success, a trade dispute ceases to exist, and justification for interference with the business of the employer ends, even though a labor union wishes to continue picketing for the purpose of coercing the employer to enter into a new contract with it. *Samuel Hertzig Corp.* v. *Gibbs*, 295 Mass. 229. The law stated in this paragraph is the common law not only of this Commonwealth but of other States and of England, and is recognized by the Supreme Court of the United States. *Pickett* v. *Walsh*, 192 Mass. 572, 587–588. *Folsom* v. *Lewis*, 208 Mass. 336. *Burnham* v. *Dowd*, 217 Mass. 351. *Harvey* v. *Chapman*, 226 Mass. 191. *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 65. *New England Wood Heel Co.* v. *Nolan*, 268 Mass. 191. *Armstrong Cork & Insulation Co.* v. *Walsh*, 276 Mass. 263, 272. *Yankee Network, Inc.* v. *Gibbs*, 295 Mass. 56. *Hitchman Coal & Coke Co.* v. *Mitchell*, 245 U. S. 229, 250 *et seq.* *Duplex Printing Press Co.* v. *Deering*, 254 U. S. 443, 472. *Ferguson* v. *Peake*, 18 Fed. (2d) 166, 57 App. D. C. 124. *Mitnick* v. *Furniture Workers Union*, 124 N. J. Eq. 147. *Quinn* v. *Leathem*, [1901] A. C. 495.*

The defendants rely on legislation, beginning in 1935, as changing the preëxisting law by legalizing their acts or at least by preventing injunctive relief against them. New definitions of the expressions "labor dispute," "a person participating or interested in a labor dispute," and a case

---

* The earlier definition of "trade dispute," as the term was used in the Conspiracy and Protection of Property Act (1875), 38 & 39 Vict. c. 86, was broadened by the Trade Disputes Act (1906), 6 Edw. VII, c. 47.

involving or growing out of a labor dispute, were provided by G. L. (Ter. Ed.) c. 149, § 20C, inserted by St. 1935, c. 407, § 1, which was evidently based upon the Federal Norris-La Guardia Act of March 23, 1932, c. 90, 47 U. S. Sts. at Large, 70. The definition of "labor dispute" in our statute of 1935 as including "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange, terms or conditions of employment," omits the words added in substance for greater breadth and clearness to substantially the same definition in both the Federal Norris-La Guardia Act, § 13 (c), and the State Labor Relations Act, St. 1937, c. 436, § 2 (7), namely, "regardless of whether the disputants stand in the proximate relation of employer and employee." See also the British Trade Disputes Act (1906), 6 Edw. VII, c. 47, § 5 (3). This omission, however, possibly may not show an intent to leave outside the meaning of "labor dispute" the kind of controversy that appears in this case.* Assuming but not deciding that the definition in our statute of 1935 is broad enough to cover the present controversy, we have to inquire for what purposes the statutory definition is to be used. The definition was prescribed, not for general application throughout the law, but only "for the purposes of" certain named sections of the statutes. An examination of those sections shows that none of them has to do with the lawfulness of acts of picketing or persuasion. The statute omits to change the substantive law of torts or deny injunctive relief against such acts in labor disputes within the definition.

It is this last mentioned omission in our statute that is decisive against the contention of the defendants that the law of this Commonwealth has been changed in their favor. Our statute does not make a frontal attack upon the pre-existing law by providing as a matter of substantive law that acts of peaceful persuasion or attempts so to persuade

---

* It should be noted, however, that these words were included in the three successive drafts (1935, H. 2007, H. 2124, H. 2234) of the bill which became St. 1935, c. 407, but were specifically expunged by amendment in the House of Representatives on June 27, 1935.

within G. L. (Ter. Ed.) c. 149, § 24, as amended by St. 1933, c. 272, shall be as completely lawful when done in the course of a "labor dispute," as that term is defined in the statutes already cited and particularly St. 1937, c. 436, § 2 (7), as when done in the course of a lawful trade dispute previously recognized by law; and by substituting for the words "lawful trade dispute" in the peaceful persuasion act the words labor dispute as defined by St. 1937, c. 436, § 2 (7). Neither does our statute attack the preëxisting law in the flank, without changing the preëxisting substantive law as to rights or torts or actions for damages, as does the Federal Norris-La Guardia Act, which in § 4 deprives the Federal courts of jurisdiction, in any case involving or growing out of a "labor dispute" as defined in that act, to restrain by injunction conduct like that of the defendants in this case. *Senn* v. *Tile Layers Protective Union,* 222 Wis. 383, affirmed 301 U. S. 468. *Lauf* v. *E. G. Shinner & Co.* 303 U. S. 323. *New Negro Alliance* v. *Sanitary Grocery Co.* 303 U. S. 552. *Levering & Garrigues Co.* v. *Morrin,* 71 Fed. (2d) 284. *Blankenship* v. *Kurfman,* 96 Fed. (2d) 450. *Cinderella Theater Co. Inc.* v. *Sign Writers' Local Union No. 591,* 6 Fed. Sup. 164. *Dean* v. *Mayo,* 8 Fed. Sup. 73, 77. *Miller Parlor Furniture Co. Inc.* v. *Furniture Workers' Industrial Union,* 8 Fed. Sup. 209. See also *Donnelly Garment Co.* v. *International Ladies' Garment Workers' Union,* 21 Fed. Sup. 807, judgment vacated *International Ladies' Garment Workers' Union* v. *Donnelly Garment Co.* 304 U. S. 243; *Donnelly Garment Co.* v. *International Ladies' Garment Workers' Union,* 99 Fed. (2d) 309; *Thompson* v. *Boekhout,* 273 N. Y. 390; *Goldfinger* v. *Feintuch,* 276 N. Y. 281, 116 Am. L. R. 477; *Geo. B. Wallace Co.* v. *International Association of Mechanics,* 155 Ore. 652.

Nothing material to this case appears in the State Labor Relations Act, St. 1937, c. 436, which follows closely the National Labor Relations Act (the Wagner-Connery Act) of July 5, 1935 (49 U. S. Sts. at Large, 449). See now St. 1938, c. 345. In § 2 (7) it does contain a broad definition of "the term 'labor dispute.'" But that definition is

to apply only when that term is "used in this act." That term is used in the act only in the definition of it, in the definition of "employee," in the definition of a "labor organization" and in § 8A. In none of these instances has it anything to do with picketing or persuasion. Nothing in the State Labor Relations Act suggests any right in a labor union, not designated or selected as the exclusive representative of all the employees in a unit for the purpose of collective bargaining, to picket a shop for the purpose of obtaining recognition of the union or a closed shop, where the employer and his employees have no relations with it and wish only to be let alone.

It follows that the law of this Commonwealth has not been changed by statute so as to prevent injunctive relief against peaceful picketing conducted for the purposes shown in this case. We are not unmindful of the fact that the legislation of 1935 followed a recommendation of the Governor that the laws relating to injunctions in labor disputes "should be liberalized and strengthened," and in another connection that the Norris-La Guardia Act should be adopted "as a basis for the drafting of the required state legislation." 1935 Senate Doc. 1. It is true that the bill as reported followed that act closely. 1935 House 2007. But the two bills that were successively substituted for the bill reported differed widely from that act, and contained nothing resembling § 4 of that act. 1935 House 2124, 2234. We cannot presume that that section was omitted from the redrafts by accident or mistake. So far as appears, the Legislature went as far as it thought fit to go in making more difficult the obtaining of equitable relief in labor disputes. If we were to assume otherwise, we could not be sure in what respect or direction the Legislature intended to go farther. Earlier in this opinion we pointed out that there are at least two different methods by which a statute might purport to prevent equitable relief against acts like those of the defendants. Those different methods follow inconsistent theories and have inconsistent consequences. We cannot know which, if either, of these methods would have

been adopted by the Legislature if it had been advised of the inadequacy of the statute as drafted to accomplish the objects desired by the defendants. We have no authority to reform the statutory language so as to accomplish some unexpressed result that, we might imagine, would have been acceptable to the proponents of the statute and to the Legislature. In short, we must apply the statute as it reads.

A few minor points remain for consideration. The findings of fact required by G. L. (Ter. Ed.) c. 214, § 9A (St. 1935, c. 407, § 4), as a prerequisite to injunctive relief, were made in substance and effect, or must be made on the reported evidence. Acts have been found which are unlawful under the laws of this Commonwealth, as has been shown. Those acts will be continued unless restrained. Without question substantial and irreparable injury to the plaintiff's property, namely, his right to do business free from illegal interference, will follow. No injury whatever will result to the defendants from the injunction, for it is not, legally speaking, an injury to a person to prevent him from continuing to perform unlawful acts. Clearly there is no adequate remedy at law, for even if the defendants are financially responsible the plaintiff cannot be compelled to sell at a valuation any part of his right to do business free from illegal interruption. The "public officers charged with the duty to protect the complainant's property" are obviously unable to "furnish adequate protection" against acts which, so far as appears, involve no breach of the peace or other violation of the criminal law warranting an arrest. *Commonwealth* v. *Gorman*, 288 Mass. 294. The "undertaking with adequate security" required from a plaintiff by subdivisions (2) and (3) is a condition of a temporary restraining order or a preliminary injunction, but not of injunctive relief given after a final determination of the merits establishing that the issuance of the injunction is neither "improvident" nor "erroneous." None of the statutory conditions of injunctive relief remains unfulfilled so as to prevent such relief by final decree in this case.

G. L. (Ter. Ed.) c. 214, § 9A (4) [St. 1935, c. 407, § 4], provides: "No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." It is not shown that the defendants individually or collectively had been "designated or selected" for the purpose of representing anyone in collective bargaining, under the State Labor Relations Act, St. 1937, c. 436, § 9 (a) (b). See now St. 1938, c. 345. Therefore the plaintiff was under no obligation to bargain with the defendants as "representatives of his employees" under § 8 (5) of that act. If it be granted that for the purposes of G. L. (Ter. Ed.) c. 214, § 9A, a "labor dispute" existed, the plaintiff did negotiate with the defendants both privately and at the office of the board of conciliation and arbitration (see G. L. [Ter. Ed.] c. 150) in an effort to settle it. The statute did not require the plaintiff to yield or surrender, as a condition of obtaining injunctive relief. It does not appear that the plaintiff failed to "make every reasonable effort to settle such dispute."

Since the foregoing opinion was written, we have been advised by counsel, that, pending the decision of this case, the plaintiff has acceded in some degree to the demands of the defendants, that he has signed a satisfactory agreement with the labor union, and that picketing has ceased. Under those circumstances the granting of injunctive relief has become unnecessary. But the right of the plaintiff to an award of damages for past injuries remains unaffected. It is elementary, that a plaintiff who had good ground for injunctive relief when the bill was filed, but who has lost his right thereto pending the suit, may have the bill retained for an award of damages. *Case* v. *Minot*, 158 Mass. 577, 588–589. *Rosen* v. *Mayer*, 224 Mass. 494. *E. Kronman, Inc.* v. *Bunn Bros. Inc.* 258 Mass. 562. *Winchester* v. *O'Brien*, 266 Mass. 33. *Degnan* v. *Maryland*

*Casualty Co.* 271 Mass. 427, 430–431. *Rooney* v. *Weeks,* 290 Mass. 18, 26. The decree is reversed, and the case is remanded to the Superior Court for further proceedings in conformity with the opinion.

*Ordered accordingly.*