KARL J. P. WALTER *vs.* FRANK McCARVEL & others.

Suffolk.   March 4, 1941. — May 29, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Equity Pleading and Practice*, Bill.   *Contract*, Validity, "Closed shop" contract.   *Labor Union*.   *Unlawful Interference*.

An averment in a bill in equity, in effect that as a result of a closed shop agreement of a labor union with a certain employer and other facts, which were not set out in the bill, an unlawful monopoly over the labor market had resulted, was a conclusion not admitted by a demurrer, and, being unsupported by specific allegations of fact, was adjudged bad on demurrer.

Averments in a bill in equity that a labor union had coerced the plaintiff's employer into discharging him in accordance with an alleged "illegal contract relating to a closed shop" were adjudged bad on demurrer where allegations as to the illegality were insufficient.

A mere refusal by an unincorporated labor union to admit to its membership an employee of one with whom it had a valid closed shop agreement, thus preventing him from remaining in the employment, did not entitle the employee to relief in equity against the union although he had made application for membership in good faith, was a competent workman and was able, ready and willing to comply with all the "legal provisions incorporated in the laws and by-laws of" the union.

BILL IN EQUITY, filed in the Superior Court on June 19, 1940, and afterwards amended.

The case was heard on the defendants' demurrer by *Greenhalge*, J.

*R. B. Owen*, for the plaintiff.

*S. S. Grant*, (*F. F. Cohen* with him,) for the defendants.

Cox, J.   This is a bill in equity brought against some of the officers of the United Packing House Workers of America, Local 11, an unincorporated voluntary labor organization, hereinafter referred to as the union, not only individually, but as fairly representing the officers and members as a class.   The defendants' demurrer was sustained by inter-

locutory decree, and the plaintiff appealed from a final decree dismissing the bill without prejudice. Although no appeal from the interlocutory decree was taken, its correctness is open for consideration upon the appeal from the final decree. *Gibbons* v. *Gibbons*, 296 Mass. 89.

The bill alleges that the plaintiff, who at no time has ever been a member of the union, obtained employment with a corporation engaged in the manufacture of meat products in Somerville in this Commonwealth at a time when there was in effect between the corporation and union a contract, which, among other things, provided that "3: The employer agrees that it shall be a condition of employment that all present employees are and shall remain members of the union in good standing during their term of employment. The employer further agrees that during the period of the agreement it shall be a condition of employment for all new employees to become members of the union within 21 days from the date of employment and that they shall remain members of the union in good standing thereafter. The employer also agrees not to continue in its employ after notification of the union any employee who has failed to become or to remain a member of the union as aforesaid. The employer shall be under no obligation to reinstate any worker discharged at the request of the union for violation of the foregoing provision if the job of the worker has been filled. 4. The employer shall have the right during the life of this agreement to hire such employees as it may from time to time and as are in its judgment best qualified to do the work required of them. 5. It is agreed that the first 21 days of any worker's employment shall be considered a trial period within which time the employer is to judge the competency of the worker."

The bill further alleges, in the fourth paragraph, that this contract, and in particular its provisions requiring membership in the union as a condition of continued employment by the corporation, "was intended by the said union and in fact constituted a part of a general plan, scheme, and conspiracy on the part of said union whereby . . . [it] either by itself or its affiliates has obtained a control and monopoly

over the labor market in the entire industry relating to the manufacture of . . . meat products throughout the community known as Greater Boston comprising a considerable area in and about the city of Boston, Massachusetts; that said contract has operated in the said community to seriously deter and prevent workmen from obtaining or continuing in their employment in the said industry which industry is of considerable proportions, and has resulted in an unlawful monopoly and illegal restraint of trade on the part of said union with respect to the employment of labor in the said industry and community."

It is alleged in the fifth paragraph of the bill that, notwithstanding the "illegality" of said contract, the defendants and the union have, through malice and with the object of injuring the plaintiff and causing his discharge, threatened to call a strike against his employer, and have thereby, through violence and threats thereof, coerced the corporation into discharging him against its will "in accordance with the provisions of said illegal contract relating to a closed shop," with resulting damage to the plaintiff.

The bill alleges in the sixth paragraph that, if the contract is legal, the plaintiff is entitled, as a member of the class for whose benefit the said "closed shop" provisions in the contract were made, to become a member of said union and to be retained or reinstated in his employment by the corporation; that, at or about the time he entered the employ of the corporation, he made application in good faith to the union and requested that he might be allowed to become a member, and that he was then a competent workman and was and still is able, ready and willing to comply with all legal provisions incorporated in the laws and by-laws of said union; but that the defendants and the union, "without right and without justifying cause, arbitrarily and maliciously refused to accept . . . [him] as a member . . . in violation of their duty toward . . . [him], and with the express purpose of injuring . . . [him] and depriving him of his employment"; and that, by reason of the defendants' refusal to admit him to membership, he was unable to comply with the provisions of the contract regarding mem-

bership, and, as a result thereof, was discharged by the corporation upon the demand of the defendants.

There are allegations as to the damage that the plaintiff has sustained. One prayer is that the defendants be enjoined from attempting in any way to enforce said "closed shop" provisions, and another is that, in the event that these provisions are legal, the defendants be ordered to perform specifically their obligations thereunder and admit the plaintiff to membership in the union.[1]

It is unnecessary to consider the eleven grounds of the demurrer, all of which are open on appeal, *Maguire* v. *Buckley,* 301 Mass. 355, 359, for we are of opinion that the demurrer was rightly sustained on the second ground, namely, that the matters alleged in the bill are not such as to entitle the plaintiff to relief in equity.

The plaintiff concedes that a closed shop agreement is legal as against a workman whose right to obtain employment, as distinguished from a right under an already existing contract of employment, is interfered with. See *Hoban* v. *Dempsey,* 217 Mass. 166; *Shinsky* v. *O'Neil,* 232 Mass. 99, 102, and cases cited; *Goyette* v. *C. V. Watson Co.* 245 Mass. 577, 589, 590; *Simon* v. *Schwachman,* 301 Mass. 573, 577, 578, and cases cited. But the plaintiff contends (1) that closed shop agreements are not legal where they are a part of a general policy to create a monopoly in the labor market, and (2) that a union that has a closed shop agreement must permit the employee to join it, and that if it does not, it cannot justify interference with his employment by virtue of the agreement. He further contends that the bill sufficiently alleges that a monopoly has been established and that the union, without right, has refused to accept him as a member.

1. No intendment in favor of the pleader can be made upon a demurrer. It admits allegations of fact well pleaded but does not admit inferences from such facts unless they are necessary inferences. It does not admit conclusions of law from facts averred. *Comerford* v. *Meier,* 302 Mass.

---

[1] There also was a prayer for damages. — REPORTER.

398, 402, and cases cited. The allegations in the fourth paragraph of the bill, hereinbefore referred to, are specifically premised upon the contract between the union and the corporation, and, in particular, upon the provisions of that contract quoted herein, which are the only provisions of it that are set out in the bill, except that its terms will be in force until May 29, 1941, "unless terminated in accordance with certain provisions therein contained." We find nothing in these provisions that is not consistent with a valid closed shop agreement, and we do not understand that the plaintiff contends otherwise. It is alleged, however, that this contract was "a part" of a general plan, scheme and conspiracy on the part of the union whereby it or its affiliates have "obtained a control and monopoly" over the labor market. There are no allegations as to the other parts of any such general plan, and the allegation that the union or its affiliates have obtained a control or monopoly over the labor market is a conclusion not admitted by the demurrer. In effect, the plaintiff alleges that as a result of the contract and other facts, which are not even set out, a control and monopoly have resulted. The question of control is one of fact. *Robbins* v. *Atkins,* 168 Mass. 45, 47. *O'Donnell* v. *Pollock,* 170 Mass. 441, 444. *Plunger Elevator Co.* v. *Day,* 184 Mass. 130, 133. *Hilden* v. *Naylor,* 223 Mass. 290, 292–293. The allegation of the existence of a monopoly stands no better. The final conclusion in said paragraph 4 is that "said contract" has resulted in an unlawful monopoly and illegal restraint of trade. In view of what has been said, we think it follows that these conclusions are not admitted by the demurrer. We are of opinion that the allegations in this paragraph do not sufficiently set forth any wrongful conduct on the part of the defendants. They are so general and indefinite as to be demurrable. What might be pertinent allegations are merely conclusions unsupported by any specific allegations of particular facts to warrant them. *Comerford* v. *Meier,* 302 Mass. 398, 404, and cases cited. Allegations of such facts as appear in the case of *Connors* v. *Connolly,* 86 Conn. 641, upon which the plaintiff relies, are lacking. The case

at bar is distinguishable from *Folsom* v. *Lewis,* 208 Mass. 336. In the circumstances, it is unnecessary to consider what the rule would be if the existence of a monopoly were sufficiently alleged. See *Commonwealth* v. *Dyer,* 243 Mass. 472; *Keith* v. *Heywood Boot & Shoe Co.* 255 Mass. 321; *A. T. Stearns Lumber Co.* v. *Howlett,* 260 Mass. 45; 95 Am. L. R. 10.

The allegations in the fifth paragraph of the bill are based upon the "illegal contract relating to a closed shop." It is assumed that this allegation of illegality is premised upon the allegations contained in the fourth paragraph of the bill, but inasmuch as those allegations fail to set out any illegal contract, the allegations in the fifth paragraph also must fail. *Mairs* v. *Madden,* 307 Mass. 378, 380, 381, and cases cited. See *A. T. Stearns Lumber Co.* v. *Howlett,* 260 Mass. 45. The allegations of the fifth paragraph fail to disclose the violation of any legal duty that the defendants owed to the plaintiff.

2. In the alternative, the plaintiff alleges in the sixth paragraph of the bill that, if the contract in question is legal, then he is entitled, as a member of the class for whose benefit the closed shop provisions in the contract were made, to become a member of the union. As already appears, he makes the further contention that, if he is not allowed to become a member, the union cannot justify interference with his employment by virtue of the closed shop agreement. The allegations in this paragraph, however, are to the end that the union has arbitrarily and without right refused to accept him as a member, in violation of its duty to him, and the specific prayer based upon these allegations is that it be ordered to admit him to membership. It is alleged that, when the plaintiff obtained his employment with the corporation, the contract in question was already in effect. It is also alleged that the plaintiff made application in good faith and requested that he might be allowed to become a member of the union; that he was a competent workman and was, and still is, able, ready and willing to comply with all the "legal provisions incorporated in the laws and by-laws of said union." The plaintiff does not contend, apart from the question whether a mo-

nopoly was created, that the closed shop agreement was not valid. Nor does he question the provisions contained in the agreement relative to the employment of members of the union in good standing. See *Shinsky* v. *O'Neil,* 232 Mass. 99; *Smith* v. *Bowen,* 232 Mass. 106, 110; *Goyette* v. *C. V. Watson Co.* 245 Mass. 577, 587–588, 591, 592; *Service Wood Heel Co. Inc.* v. *Mackesy,* 293 Mass. 183, 187; *Simon* v. *Schwachman,* 301 Mass. 573, 577, 578. The conclusion that the plaintiff, as a member of a class, is entitled to become a member of the union is not supported by any allegations of fact, unless they are found in the quoted provisions of the contract, and we are of opinion that no such facts there appear. In the absence of any specific allegations of fact showing that the plaintiff, as of right, was entitled to membership, what was said in *Maguire* v. *Buckley,* 301 Mass. 355, 360, is pertinent. It is alleged in the bill that the union is an unincorporated voluntary labor organization. It well may be that an applicant for membership is able and willing to comply with the laws and by-laws, but it by no means follows from this that the members of such a voluntary organization can be required to admit him to membership. Other qualifications for membership in any form of a voluntary organization readily come to mind. Upon the allegations of the bill, it cannot be said that any violation of duty of the union to the plaintiff is disclosed by its refusal to accept him as a member.

It follows, from what has been said, that the demurrer was rightly sustained.

*Decree affirmed with costs.*