THE COLONIAL PRESS, INC. *vs.* ISAAC L. ELLIS & others.

Worcester.   April 9, 1947. — June 26, 1947.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Labor and Labor Union.   Unlawful Interference.   Strike.   Picketing. Constitutional Law,* Freedom of speech.   *Equity Pleading and Practice,* Injunction.

A strike by union employees, to secure the inclusion, in a contract which was in process of negotiation between the employer and the union, of a provision in substance that employees who should be members of the union when the contract should become effective and at the expiration of an "escape period," so called, or who thereafter should voluntarily join the union, should as a condition of employment retain their membership in good standing for the duration of the contract, was designed to afford augmented strength to the union in a potential future controversy, and was unlawful.

Restraint by injunction of picketing of an employer's plant in the course of an unlawful strike was justifiable and not in violation of the right to freedom of speech under the Federal Constitution where it appeared that there had been unlawful acts committed which would be continued unless restrained, that the picketing was intended to injure the employer's business, that there had been substantial and irreparable injury thereto, that the employer had no adequate remedy at law, and that police protection was inadequate because the injury inflicted upon the employer was not through violation of criminal law.

BILL IN EQUITY, filed in the Superior Court on September 13, 1946.

The case was heard by *Cabot*, J.

*J. S. Derham*, (*W. T. Buckley* with him,) for the defendants.

*S. G. Barker*, for the plaintiff.

WILKINS, J. The plaintiff, a printer and distributor of books in Clinton, brings this bill in equity against certain individuals, who are officers and members either of a labor union known as the Clinton Printing Pressmen and Assistants Union, Local 265, or of a parent union known as the International Printing Pressmen and Assistants Union of North America. By the bill, which alleges the existence of an unlawful strike, the plaintiff seeks an injunction against picketing and against interference with its business. The judge made "findings and rulings of law," pursuant to which a final decree was entered enjoining the defendants, who appealed. The evidence is not reported.

The present purpose of the strike is to secure the retention in a contract, which is to be negotiated between the plaintiff and the local union, of a maintenance of union membership provision similar to that contained in their previous contract, which had been terminated. The most important part of this provision was that, subject to a fifteen day "escape period," "All employees who, on February 14, 1945, are members of the union in good standing in accordance with its constitution and by-laws and all employees who become members after that date, shall as a condition of employment maintain their membership in good standing for the duration of the collective agreement in which this provision is incorporated, or until further order of the [national war labor] board." [1] The provision had been

---

[1] The remainder of the provision was as follows: "The union, its officers and members shall not intimidate or coerce employees into joining the union or continuing their membership therein. (2) If a dispute arises as to whether an employee (1) was a member of the union on the date specified above or (2) was intimidated or coerced during the fifteen day 'escape period' into joining the union or continuing his membership therein, such dispute may be submitted for determination by an arbitrator to be appointed by the regional war labor board, region I. The decision of the arbitrator shall be final and binding upon the parties. (3) If a dispute arises as to whether an employee (1) has failed to maintain his membership in the union in good standing after the aforesaid date, or (2) was intimidated or coerced into joining the union after the aforesaid date, such dispute may be submitted for determination by an arbitrator to be selected in the manner provided by the contract of the

inserted in the previous contract at the direction of the national war labor board. The judge ruled that the strike is "for an illegal purpose within the law of the Commonwealth," and made the findings prerequisite to issuing an injunction in a case growing out of a labor dispute, as provided in G. L. (Ter. Ed.) c. 214, § 9A, as inserted by St. 1935, c. 407, § 4. The final decree permanently enjoined the defendants from proceeding with or encouraging the groups about the entrances to the plaintiff's place of business "including the railroad crossing over Water Street"; from interfering with the entering or departure of the plaintiff's officers and employees into or from the plaintiff's place of business; from interfering with the plaintiff's business; and from carrying on a strike for the purpose of compelling the plaintiff to make a contract containing a maintenance of union membership provision.

It is well settled in this Commonwealth, as the defendants concede, that a strike for a closed shop is a strike for an illegal purpose. *Reynolds* v. *Davis*, 198 Mass. 294. *Folsom* v. *Lewis*, 208 Mass. 336. *Baush Machine Tool Co.* v. *Hill*, 231 Mass. 30. *Folsom Engraving Co.* v. *McNeil*, 235 Mass. 269. *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 60–61. *Quinton's Market, Inc.* v. *Patterson*, 303 Mass. 315, 317. *Fashioncraft, Inc.* v. *Halpern*, 313 Mass. 385, 388. "It is also settled that in order to justify the infliction of intentional injury and to escape the liability which follows from the ordinarily tortious quality of such an act, the

---

parties, or if no such provision exists, to be selected by special agreement. In the absence of such contract provision or special agreement, the arbitrator will be selected by the regional war labor board, region I, on due application. The decision of the arbitrator shall be final and binding upon the parties. Any party desiring to post or otherwise publish an official explanation by the national war labor board of the foregoing maintenance of membership provision may use the attached form of maintenance of membership notice. A statement of the procedure to be followed in the absence of some other procedure agreed to by the parties, is also attached. Within six months from the date of the directive order the company may request that the regional war labor board, region I, review the maintenance of membership provision if there has been any work stoppage."

The "escape period" is not set forth or described in the record. In other cases the board's order provided before its effective date for a fifteen day period, during which members might withdraw from the union. See, for example, *In re Ryan Aeronautical Co.* 1 War Lab. Rep. 305, 307; *In re Caterpillar Tractor Co.* 2 War Lab. Rep. 75, 77.

right of their own which the defendants claim to exercise must bear a direct, and not a merely remote or secondary, relation to their own lawful advantage. *Plant* v. *Woods,* 176 Mass. 492, 502. *Berry* v. *Donovan,* 188 Mass. 353, 359." *Quinton's Market, Inc.* v. *Patterson,* 303 Mass. 315, 317. Merely strengthening the union for future contests would not be sufficient justification for the defendants. *Folsom* v. *Lewis,* 208 Mass. 336, 338. It is suggested that the cases cited in this paragraph should be re-examined and their doctrine repudiated, but even were we so disposed, their principles are too firmly established in our jurisprudence. Such a course is certainly not required by anything in *Hamer* v. *Nashawena Mills, Inc.* 315 Mass. 160.

The first question to be decided is whether a strike for a maintenance of union membership agreement falls within the unlawful category. This provision in union contracts originated with the national defense mediation board in 1941 and was subsequently adopted by the national war labor board. See Report on the work of the National Defense Mediation Board, Bulletin No. 714, United States Department of Labor, Bureau of Labor Statistics (1942); 57 Harv. L. Rev. 183, 184, Manoff, The National War Labor Board and the Maintenance-of-Membership Clause; *In re Caterpillar Tractor Co.* 2 War Lab. Rep. 75, 78 (dissenting opinion). The first cases involving the subject before the national war labor board stress the fact that the unions had renounced the right to strike for the period of the war, and point out the fairness of allowing them in return a "union security plan." *In re Walker Turner Co. Inc.* 1 War Lab. Rep. 101, 108, 109. *In re International Harvester Co.* 1 War Lab. Rep. 112, 120–121. The same underlying thought appears in later opinions of the board. See, for example, *In re Ryan Aeronautical Co.* 1 War Lab. Rep. 305, 318; *In re Caterpillar Tractor Co.* 2 War Lab. Rep. 75, 77; *In re Monsanto Chemical Co.* 2 War Lab. Rep. 479, 482; *In re General Chemical Co.* 3 War Lab. Rep. 387, 394–395. *In re Harvill Aircraft Die Casting Corp.* 6 War Lab. Rep. 334, 338, it was said, "The National War Labor

Board, by the provision for the maintenance of membership, seeks to stabilize the unions in an area of struggle."

The provision is explained in decisions of the board. It requires only that an employee who is a member when the contract becomes effective and at the expiration of the escape period, or who thereafter voluntarily joins the union, shall remain a member in good standing. It does not create a closed shop, because it does not require that only union members be employed. It does not create a union shop, because it does not require the employees who have been hired, to join the union. It does not create a preferential union shop, because it does not require that preference in hiring be given to union members. No employee, old or new, is obliged to join the union to keep his job. If in the union, a member has the duration of the escape period to get out but still keep his job. If not in the union, the worker is free to stay out and keep his job. See *In re Federal Shipbuilding & Drydock Co.* 1 War Lab. Rep. 140, 142; *In re Harvill Aircraft Die Casting Corp.* 6 War Lab. Rep. 334, 338.

It is obvious that the provision for maintenance of union membership is in substance a means to provide union security. As such, it falls within the principles frequently enunciated with respect to the closed shop. A strike for its inclusion in an agreement with an employer is designed to afford augumented strength to the union in a potential future controversy. It cannot be upheld as a lawful strike objective under our decisions. The right of their own which the defendants claim to exercise bears merely a remote or secondary, and not a direct, relation to their own lawful advantage. The fact that union membership is not compulsory is only a difference in the degree of security.

The next question for our determination is whether, notwithstanding the unlawful purpose of the strike, the defendants may picket the plaintiff's plant at the entrances and at the "railroad crossing," under the guise of the right of free speech guaranteed under the Constitution of the United States. The judge found that the union placed a picket line around the plaintiff's plant, and also at a rail-

road crossing where a highway crosses the railroad at grade, about a mile or mile and one half from the plant, and over which a spur track ran to the plant, as well as to other manufacturing establishments; that during the first week there were more pickets than were necessary for purely peaceful picketing; that they marched in a circle outside the gates of the plant, sometimes as close together as two feet, and by their words and actions intimidated to some extent those who desired to enter or leave the premises; that thereafter the number of pickets was reduced, and the picketing has been of an orderly and peaceful nature; that there have been some instances where employees of the plaintiff and others doing business with it have been subjected to violence and attack; but that it was not shown that these acts were instigated by the union.

The facts which the judge found pursuant to G. L. (Ter. Ed.) c. 214, § 9A, as inserted by St. 1935, c. 407, § 4, are that by reason of the combination of persons, members of the union, intentionally endeavoring to injure the business of the plaintiff, there have been unlawful acts committed which will be continued unless restrained; that there has been substantial and irreparable injury to the plaintiff's business; that there has been injury to the plaintiff's property which is greater than that to the defendants; that the denial of relief would inflict greater injury upon the plaintiff than granting it would on the defendants; that the plaintiff has no adequate remedy at law; that the public officers charged with the duty to protect the plaintiff's property are unable to furnish adequate protection, in that the injury to the plaintiff's property has been caused not by any acts of the defendants which are violations of the criminal law, but rather by acts which are unlawful from the point of view of the civil law of the Commonwealth; that the plaintiff has not failed to comply with any obligation imposed upon it by law; and that the plaintiff has made every reasonable effort to settle the dispute by negotiation and "with the aid of available governmental machinery."

The defendants rely upon certain of the more recent cases in the Supreme Court of the United States. *Senn* v.

*Tile Layers Protective Union,* 301 U. S. 468, 478. *Thornhill* v. *Alabama,* 310 U. S. 88. *Carlson* v. *California,* 310 U. S. 106. *Milk Wagon Drivers Union of Chicago, Local 753* v. *Meadowmoor Dairies, Inc.* 312 U. S. 287. *American Federation of Labor* v. *Swing,* 312 U. S. 321. *Carpenters & Joiners Union of America, Local No. 213* v. *Ritter's Cafe,* 315 U. S. 722. *Bakery & Pastry Drivers & Helpers Local 802 of the International Brotherhood of Teamsters* v. *Wohl,* 315 U. S. 769. *Cafeteria Employees Union, Local 302* v. *Angelos,* 320 U. S. 293. See *Allen-Bradley Local No. 1111, United Electrical, Radio & Machine Workers of America* v. *Wisconsin Employment Relations Board,* 315 U. S. 740. We do not understand, however, that that court has held that picketing in support of an unlawful objective cannot be enjoined. See *Carpenters & Joiners Union of America, Local No. 213* v. *Ritter's Cafe,* 315 U. S. 722, 727-728; *Bakery & Pastry Drivers & Helpers Local 802 of the International Brotherhood of Teamsters* v. *Wohl,* 315 U. S. 769, 775; 56 Harv. L. Rev. 180, Teller, Picketing and Free Speech; 56 Harv. L. Rev. 513, 529, Dodd, Picketing and Free Speech: A Dissent. Until there is an unequivocal pronouncement to that effect we adhere to the view of the law laid down in our own decisions. *Simon* v. *Schwachman,* 301 Mass. 573, 577, and cases cited. *Quinton's Market, Inc.* v. *Patterson,* 303 Mass. 315. *R. H. White Co.* v. *Murphy,* 310 Mass. 510, 522. *Fashioncraft, Inc.* v. *Halpern,* 313 Mass. 385, 391.

*Decree affirmed with costs.*