DAVIS BROTHERS FISHERIES CO., INC. *vs.* MANUEL
PIMENTEL, JUNIOR, & others.

Essex.    October 6, 1947. — March 11, 1948.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Labor and Labor Union. Unlawful Interference. Strike. Picketing. Con-
stitutional Law,* Freedom of speech. *Conspiracy. Boycott. Equity
Pleading and Practice,* Labor case, Injunction, Reconsideration.
*Notice. Jurisdiction,* Labor. *Equity Jurisdiction,* Labor dispute.

In this Commonwealth at common law, a strike, the sole purpose of
which is to force an employer to maintain either a shop closed to all
employees except members of a union or a shop where employees must
join the union after they have been employed a specified period of
time, is illegal.

A decree issued in a suit in equity enjoining members of a labor union
from peaceful picketing in support of an unlawful objective did not
violate the right to freedom of speech under the Federal Constitution.

In a suit in equity brought by a corporation engaged in Gloucester in
canning fish against a union of workmen engaged in that industry
and also against a union of fishermen who constituted the crews of
practically all the fishing boats operating out of Gloucester, upon
findings, warranted by reported evidence, that, while the workmen's
union in furtherance of a strike for an unlawful purpose were picketing
the plaintiff's premises, the fishermen's union engaged in an unlawful
conspiracy with the workmen's union to assist the strike by not de-
livering fish to the plaintiff, and that the action of the fishermen's
union constituted "an illegal combination in the nature of a sympa-
thetic strike or boycott" whereby the Gloucester boats, whose crews
were members of the fishermen's union and from which eighty to
ninety per cent of the plaintiff's supply of fish had come, did not bring
fish to the plaintiff, an injunction restraining both unions from con-
tinuing such conspiracy and conduct was justified.

A controversy between a labor union and an employer as to his main-
taining a closed shop or union shop was a "labor dispute" within
G. L. (Ter. Ed.) c. 149, § 20C, inserted by St. 1935, c. 407, § 1, al-
though there was no dispute as to wages or working conditions and a
great majority of the employer's employees were not members of the
union.

Evidence warranted findings, in a suit in equity respecting a labor dis-
pute, of all facts enumerated in § 9A, inserted in G. L. (Ter. Ed.)
c. 214 by St. 1935, c. 407, § 4, material in the circumstances and
prerequisite to the issuance of an injunction.

Compliance with the requirement of § 9A (2), as inserted in G. L. (Ter. Ed.) c. 214 by St. 1935, c. 407, § 4, that notice of the hearing preliminary to issuance of an injunction in a suit in equity involving a labor dispute be given to "the chief of those public officials of the city or town within which the unlawful acts have been threatened or committed charged with the duty to protect" the plaintiff's property, was not required where there was no evidence of acts on the part of the defendants involving a breach of the peace or a violation of the criminal law warranting an arrest.

The pendency of some features of a labor dispute between an employer and a labor union before the national war labor board did not preclude maintenance of a suit in equity by the employer to enjoin the union from conducting picketing in furtherance of an unlawful strike.

A judge of the Superior Court, who had heard a suit in equity respecting a labor dispute and under § 9A, inserted in G. L. (Ter. Ed.) c. 214 by St. 1935, c. 407, § 4, had issued a preliminary injunction against the defendants, and to whom, because of lack of a material finding of fact under § 9A (1) (c), the suit had been remanded upon reversal of the decree by a justice of the Supreme Judicial Court under § 9A (6) "without decision upon the question whether the Superior Court may, upon evidence already heard, make new findings and enter a new interlocutory decree, or whether it must, before entering any new interlocutory decree, hear evidence de novo," had jurisdiction to reconsider the case in chambers in another county than that in which it originally was heard, and on the evidence already heard, and thereupon to make the omitted finding and enter a new decree granting a preliminary injunction.

BILL IN EQUITY, filed in the Superior Court on December 4, 1943.

Originally, the defendants were the members of the Sea Foods Workers' Union, Series 1572, Local 1, of Gloucester, Massachusetts (hereinafter called the workers' union); the members of Atlantic Fishermen's Union, No. 21455 (hereinafter called the fishermen's union); the members of Drivers, Chauffeurs and Helpers Union, Local 42; and the members of Brotherhood of Railroad Clerks, Local 2119. By consent of the plaintiff, the bill was dismissed as to the members of Brotherhood of Railroad Clerks, Local 2119. After a hearing on the merits, the bill was dismissed as to the members of Drivers, Chauffeurs and Helpers Union, Local 42.

The suit first was heard in December, 1943, by *Swift*, J., upon a plea in abatement questioning the jurisdiction of the court, filed by the workers' union. The plea is described

in the opinion, *post*, 510.   It was overruled.   The same question of jurisdiction was again raised at the opening of the hearing on the merits ànd at the hearing in this court.

There then were hearings under § 9A, inserted in G. L. (Ter. Ed.) c. 214 by St. 1935, c. 407, § 4, by *Swift*, J., in the Superior Court, and, successively, by *Lummus*, J., and by *Dolan*, J., in the Supreme Judicial Court, following which a preliminary injunction was issued against the workers' union and the fishermen's union.   These matters appear in the opinion, *post*, 507–509.

The bill then was amended, the defendants workers' union and fishermen's union filed answers to the amended bill, and the suit was heard upon the merits by *Hurley*, J., by whose order a final decree (1) enjoining the officers and members of the workers' union "individually and collectively, . . . from in any manner interfering with the plaintiff's business by picketing or otherwise, and from inducing or seeking to induce any of the plaintiff's employees to cease their employment by threats, promises, acts of intimidation, picketing or otherwise"; (2) enjoining them and the officers and members of the fishermen's union "individually and collectively" "from agreeing, conspiring or combining in any way to decline employment in connection with the loading or unloading of fish at the plaintiff's premises, or the selling or offering to sell fish at the plaintiff's premises, or from interfering with the business of the plaintiff, or taking any other action intended to interfere with the plaintiff's business, or from in any manner preventing any persons from assisting or dealing with the plaintiff in the conduct of its business"; and (3) enjoining the individuals who were officers and members of said unions, "individually and collectively," "from attempting to pursuade or coerce any person or persons to cease any dealings with the plaintiff, and in particular from coercing or persuading any person to refuse to sell or offer for sale fish to the plaintiff."

*H. Wise*, for the defendants.

*D. Burstein*, for the plaintiff.

SPALDING, J.   The plaintiff, a corporation engaged in canning fish, brings this bill in equity against the officers

and members of two unions: the Sea Food Workers' Union, Series 1572, Local 1, of Gloucester, Massachusetts, hereinafter called the workers' union, and the Atlantic Fishermen's Union, No. 21455, hereinafter called the fishermen's union. The bill alleges that the workers' union was engaged in an unlawful strike and that it had entered into an unlawful combination and conspiracy with the fishermen's union to interfere with and injure the plaintiff's business, and sought an injunction against interference with its business by picketing or otherwise. From interlocutory and final decrees enjoining the defendants, the defendants appealed. The judge made findings of material facts and the evidence is reported. The defendants also bring certain questions here by exceptions.

The findings of the judge included the following: The plaintiff is a corporation which operates a fish cannery in Gloucester. The workers' union is an unincorporated labor organization, the members of which are employed in processing and canning fish. The fishermen's union is a labor organization embracing workmen who constitute the crews of fishing boats operating out of Gloucester. Both unions are affiliated with the American Federation of Labor. On September 16, 1942, the plaintiff and the workers' union entered into an agreement which ceased to be operative after March 31, 1943. [1] After the expiration of this agreement no contract existed between the plaintiff and the workers' union.

The defendant White, a business agent of the workers' union and the officer in charge of its affairs, was desirous of entering into a new agreement with the plaintiff. The contract proposed by him was to include provisions that the workers' union was to be the exclusive bargaining agent of the plaintiff's employees, that all of its employees be required to join the union, [2] and that he (White) be given unrestricted

---

[1] In this agreement, which is before us as an exhibit, the plaintiff recognized the workers' union as the exclusive bargaining agency for all of its employees, with certain exceptions not here material. The agreement also contained a so called "union shop", clause, which provided that in the event that the workers' union could not supply the necessary employees the plaintiff could obtain them elsewhere but after thirty days such employees must become members of the union.

[2] Elsewhere in his findings the judge found that the workers' union was seeking a contract for a closed shop, and there was evidence to support such a finding.

rights of visitation to the plaintiff's factory.   There was no dispute between the plaintiff and the workers' union with respect to working conditions and wages.   The wages paid by the plaintiff were for the most part higher than the union schedule.   At the time that these negotiations were being conducted the vast majority of the plaintiff's employees were not members of the workers' union and the plaintiff was unwilling to recognize it as .the exclusive bargaining agency of its employees.   The workers' union at all times refused to permit an election to be conducted by either the state or national labor relations board for the purpose of determining whether the employees wished it to be their exclusive bargaining agent.   "The great majority of the employees of the plaintiff did not wish to be represented by . . . [the workers' union] and did not wish it to be the sole and exclusive bargaining agent of the plaintiff's employees."

Failing to reach an agreement with the plaintiff, the workers' union in accordance with the war labor disputes act [1] gave notice of the existence of a labor dispute which threatened to interrupt war production, and upon the expiration of the statutory period of thirty days the national labor relations board caused a vote of the plaintiff's employees to be taken by secret ballot to determine whether they desired to permit an interruption of war time production.   Fifty-one employees voted in the negative and five in the affirmative.   Immediately upon learning of the vote, the workers' union called a strike and proceeded to picket the plaintiff's premises.   On the first day of the strike all of the plaintiff's employees crossed the picket line.   Thereafter only five employees, all members of the workers' union, stayed out on strike.

During the period that picketing continued no Gloucester boat manned by crews which were members of the fishermen's union delivered any fish to the plaintiff.   Due to the fact that the crews of practically all of the fishing boats operating out of Gloucester were members of the fishermen's union, that union had a monopoly of such labor and no

_____
[1] 57 U. S. Sts. at Large, 163, c. 144, § 8 (a) (1), (2).

captain or owner of a fishing boat could attempt to deliver fish to the plaintiff without being faced with labor trouble with that union.  The judge ruled that the strike called by the workers' union was illegal and that the action of the fishermen's union "constituted an illegal combination in the nature of a sympathetic strike or boycott."

No evidence was introduced touching the issue of damages, and it was stipulated by the parties that the failure to present any evidence on this issue was without prejudice to the plaintiffs' right to recover damages in an action at law. There is no evidence that the picketing at any time was other than peaceful, or that the number of pickets employed was excessive.

Facts in addition to those hereinbefore stated will be mentioned hereinafter as occasion requires.

The findings of the judge establish that one of the purposes, if not the principal one, of the strike was to obtain a closed shop.  This finding is supported by evidence.  But even if we assume, as the defendants argue, that the evidence required a finding that the workers' union sought a union shop (one where the employees who have been hired by the plaintiff must join the union after they have been in its employ a specified period of time), it would not affect the result.  It is settled by our decisions that a strike either for a closed shop or for a union shop is illegal.  This subject has been fully discussed in the recent case of *Colonial Press, Inc.* v. *Ellis*, 321 Mass. 495, where the authorities are collected.  What was said there need not be repeated.  That decision is controlling here.

On behalf of the workers' union, however, it is urged that to enjoin it from picketing in the circumstances here disclosed would violate its right of free speech under the Constitution of the United States.  In support of this contention several recent decisions of the Supreme Court of the United States are relied on. [1]  With respect to a similar con-

---

[1] *New Negro Alliance* v. *Sanitary Grocery Co.* 303 U. S. 552.  *Thornhill* v. *Alabama*, 310 U. S. 88.  *Carlson* v. *California*, 310 U. S. 106.  *American Federation of Labor* v. *Swing*, 312 U. S. 321.  *Bakery & Pastry Drivers & Helpers Local 802 of the International Brotherhood of Teamsters* v. *Wohl*, 315 U. S. 769.  *Milk Wagon Drivers' Union, Local No. 753* v. *Lake Valley Farm Products, Inc.* 311 U. S. 91.  *United States* v. *Hutcheson*, 312 U. S. 219.

tention in *Colonial Press, Inc.* v. *Ellis*, 321 Mass. 495, we said at page 501, "We do not understand, however, that that court has held that picketing in support of an unlawful objective cannot be enjoined. See *Carpenters & Joiners Union of America, Local No. 213* v. *Ritter's Cafe*, 315 U. S. 722, 727–728; *Bakery & Pastry Drivers & Helpers Local 802 of the International Brotherhood of Teamsters* v. *Wohl*, 315 U. S. 769, 775; 56 Harv. L. Rev. 180, Teller, Picketing and Free Speech; 56 Harv. L. Rev. 513, 529, Dodd, Picketing and Free Speech: A Dissent. Until there is an unequivocal pronouncement to that effect we adhere to the view of the law laid down in our own decisions." See *Saveall* v. *Demers, ante,* 70, 73–74.

That part of the decree which enjoins the fishermen's union is based upon the findings that both unions were engaged in an unlawful conspiracy to achieve an unlawful purpose and that the action of the fishermen's union constituted "an illegal combination in the nature of a sympathetic strike or boycott." Since the fishermen's union earnestly challenges these findings, it becomes necessary to consider whether they are supported by the evidence. The pertinent evidence touching this issue was as follows: The defendant White told O'Hara, an officer of the plaintiff, that if he did not sign a contract with his union (the workers' union) the plaintiff would not get any fish. The agents representing the fishermen's union at Gloucester at the time of the strike were Gomes and Sparrow. On the day the strike began the defendant White met Sparrow and informed him that the plaintiff's premises were being picketed and asked what he (Sparrow) could do about it. Sparrow said that a boat, the "Catherine," was in, that he thought the captain was a union member, and that he would go down to see him. When he got to the wharf the "Catherine" had not arrived so he wrote a message on a card and gave it to a picket who subsequently delivered it to one Clark, the captain of the "Catherine." The message was as follows: "Capt. Clark. Don't land any fish at Davis Brother wharf by order Fishermens Union. John Sparrow, Delegate." The captain, who was a member of the fisher-

men's union, upon receiving the message regarded it as an order and went elsewhere. Sparrow testified that members of the fishermen's union were not permitted to cross a picket line and if they did they could "be brought up on charges." [1] Gomes while the strike was on told O'Hara that if he signed a contract with the workers' union he would be "all right" but otherwise he was "not going to get fish." McHugh, who was secretary-treasurer of the fishermen's union, said to O'Hara while the trial of the case was in progress, "Well, Jack, haven't we put you out of business yet?" McHugh stated that the position of the fishermen's union in a case of picketing by another union was that its members were "not to reason why" and that those who crossed a picket line would be expelled. A few days after the strike started Sparrow at a hearing in court authorized a stipulation to be entered into on behalf of himself, Gomes and the fishermen's union that "in lieu of an injunction the said union and the said delegates will withdraw and cancel all stop orders and instructions heretofore issued directing or requesting the crews or captains of any fishing vessels not to deliver or unload fish at the plaintiff's wharf or premises, and that they will notify such captains and crews hereof as the plaintiff may request, and that the said union and the said delegates will not in any manner hereafter interfere with any delivery of fish to the plaintiff." The finding of the judge that this stipulation was not lived up to by Sparrow or Gomes was supported by the evidence. Until the picketing was enjoined no Gloucester boat with crews who were members of the fishermen's union brought fish to the plaintiff's wharf.

We are of opinion that the judge could find — as in effect he did — that the officers and members of the fishermen's union conspired and combined with the workers' union to accomplish an unlawful purpose and that he rightly ruled that the plaintiff was entitled to injunctive relief against both unions. He also could find that what the officers did

---

[1] The constitution of the fishermen's union stated that one of its purposes was to assist "other bona fide labor organizations in the attainment of their labor demands" and a duty was imposed on members of the union "to shun all places or institutions where scab labor is employed."

on behalf of their respective unions was not in excess of their authority. *National Overall Dry Cleaning Co.* v. *Yavner,* 321 Mass. 434, 437.. Doubtless the members of the fishermen's union were at liberty to refuse to deliver fish to the plaintiff if they saw fit. See *Robitaille* v. *Morse,* 283 Mass. 27, 33; *Foster* v. *Shubert Holding Co.* 316 Mass. 470, 475; *Boylston Housing Corp.* v. *O'Toole,* 321 Mass. 538, 548– 551; Restatement: Torts, § 762 and § 765, comment a. But they could not by concerted action refuse to deliver fish where the purpose of such refusal was to injure the plaintiff and to assist the workers' union in its strike for an unlawful objective, namely, the obtaining of a closed shop. A concerted refusal to deal under such circumstances cannot be said to have been in "the exercise of an equal and competing right" (*Saveall* v. *Demers, ante,* 70, 72.) or to "have the justification of competition or of self-interest" (*Robitaille* v. *Morse,* 283 Mass. 27, 33) and is tortious. Teller, Labor Disputes & Collective Bargaining (1940) § 147. *Carlson* v. *Carpenter Contractors' Association of Chicago,* 305 Ill. 331. See *Carew* v. *Rutherford,* 106 Mass. 1; *Burnham* v. *Dowd,* 217 Mass. 351; *Cornellier* v. *Haverhill Shoe Manufacturers' Association,* 221 Mass. 554, 559–561; *Willett* v. *Herrick,* 242 Mass. 471, 479–481; *Armstrong Cork & Insulation Co.* v. *Walsh,* 276 Mass. 263.

There can be no doubt that the controversy between the plaintiff and the workers' union falls within the definition of a labor dispute contained in G. L. (Ter. Ed.) c. 149, § 20C, inserted by St. 1935, c. 407, § 1. Consequently the provisions of G. L. (Ter. Ed.) c. 214, § 9A, inserted by St. 1935, c. 407, § 4, relative to injunctions in labor disputes are applicable. The judge, as the findings set forth in the footnote indicate, found that there had been compliance with the requirements of § 9A. [1] Some of these findings are chal-

---

[1] He found that unlawful acts had been committed and would continue unless restrained; that substantial and irreparable injury to the plaintiff's property would follow; that as to each item of relief granted greater injury would be inflicted upon the plaintiff by the denial of relief than would be inflicted upon the defendants by the granting of relief; that the plaintiff had no adequate remedy at law; that the public officers charged with the duty of protecting the plaintiff's property were unable to furnish adequate protection inasmuch as the unlawful acts of the defendants involved no

lenged by the defendants. They contend that the plaintiff failed to make every reasonable effort to settle the dispute as required by § 9A (4). This section provides that "No . . . injunctive relief shall be granted to any complainant . . . who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." We assume in favor of the defendants, without decision, that there must be a reasonable effort to settle the dispute by all of the methods mentioned and not merely by one of them. See *Brotherhood of Railroad Trainmen, Enterprise Lodge, No. 27* v. *Toledo, Peoria & Western Railroad,* 321 U. S. 50, construing a similar provision (U. S. C. [1940 ed.] Title 29, § 108) in the Norris-LaGuardia act. The judge's finding that the plaintiff "has made every reasonable effort to settle . . . [the] dispute" satisfied the requirements of the statute and was not plainly wrong. We have examined the evidence with care relating to this aspect of the case and are of opinion that it was sufficient to support the finding.

The finding that "substantial and irreparable injury to the plaintiff's property will follow" was supported by the evidence, which shows that from eighty to ninety per cent of the plaintiff's supply of fish comes from Gloucester and that while the picketing continued none of the Gloucester boats which customarily supplied the plaintiff with fish docked at the plaintiff's wharf. These facts, taken together with the admissions in pleadings of the defendants to the effect that they would "find it difficult" to respond in money damages, were sufficient, we think, to support the judge's finding.

The defendants contend that the plaintiff was not entitled to relief because of failure to comply with G. L. (Ter. Ed.) c. 214, § 9A (2), which provides that the hearing at which an injunction is sought "shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is

breach of the peace or other violations of the criminal laws; that the plaintiff had complied with all obligations imposed by law which were involved in the dispute in question; and that the plaintiff had made every reasonable effort to settle the dispute.

sought, *and also to the chief of those public officials of the city or town within which the unlawful acts have been threatened or committed charged with the duty to protect the complainant's property*" (emphasis supplied).   The public officials mentioned in the statute were not made parties nor does it appear that they were notified.   The statute, however, does not require that they be made parties; it requires only notice.   In the circumstances obtaining here no notice was necessary.   Obviously the purpose of such notice is to make certain in cases where an injunction is sought to prevent physical damage to the plaintiff's property that there will be proof that those charged with the duty of protecting such property are unable or unwilling to furnish adequate protection.   See § 9A (1) (e).   Where, as here, there was no evidence of acts involving a breach of the peace or violation of the criminal law warranting an arrest, the public officials charged with the duty to protect the plaintiff's property were obviously unable to be of any assistance. *Simon* v. *Schwachman,* 301 Mass. 573, 582.   Notice in these circumstances would have been an empty formality.   *Boise Street Car Co.* v. *Van Avery,* 61 Idaho, 502, 516.   *Weist* v. *Dirks,* 215 Ind. 568, 570–571.

The defendants urge that the bond filed by the plaintiff did not satisfy the requirements of § 9A (2) and (3).   But it is not necessary to decide this question.   "The 'undertaking with adequate security' required from a plaintiff by subdivisions (2) and (3) is a condition of a temporary restraining order or a preliminary injunction, but not of injunctive relief given after a final determination of the merits establishing that the issuance of the injunction is neither 'improvident' nor 'erroneous.' "   *Simon* v. *Schwachman,* 301 Mass. 573, 582.

The plaintiff argues that there was no labor dispute between it and the fishermen's union within the meaning of those words in G. L. (Ter. Ed.) c. 149, § 20C, and that therefore compliance with the provisions of G. L. (Ter. Ed.) c. 214, § 9A, was not necessary.   But we need not decide this question inasmuch as we have already held that the requirements of § 9A have been satisfied.

A few minor points remain for consideration. The defendants pleaded in abatement that after the bill was filed the plaintiff had caused the controversy to be taken over by the national war labor board; that this board assumed full jurisdiction; and that its jurisdiction was exclusive. The judge rightly overruled the plea. "The National War Labor Board is not, under the law, vested with judicial functions, nor does it have the power to enforce its determinations, called 'directives,' upon the parties to a controversy before it. It is not a substitute for the courts, and the pendency of a controversy before it is not a bar to a suit in the courts." *Oil Workers International Union, Local No. 463* v. *Texoma Natural Gas Co.* 146 Fed. (2d) 62, 65 (C. C. A. 5). To the same effect are *American Brake Shoe Co.* v. *Grybas,* 63 Fed. Sup. 414 (D. C. D. of Mass.), and *Pearson Candy Co. Ltd.* v. *Waits,* 27 Cal. (2d) 615, 619.

The defendants' exceptions must be overruled. These seek to raise the question that the judge who issued the preliminary injunction was without jurisdiction to do so. When a final decree has been entered a preliminary injunction has served its purpose, and ordinarily on an appeal from a final decree there is no occasion to consider whether the granting of such an injunction was proper. *Lowell Bar Association* v. *Loeb,* 315 Mass. 176, 189–191. But in view of the remedy given to a defendant by § 9A (2) and (3) in the event of an erroneous or improvident issuance of a preliminary injunction, it becomes necessary for us to consider whether it was properly granted. See also § 9A (6). It appears that the judge who granted the preliminary injunction heard the case in Essex County where the bill was filed. The case was heard in open court on the testimony of witnesses with opportunity for cross-examination in compliance with G. L. (Ter. Ed.) c. 214, § 9A (1). Upon a report of the case to a justice of this court under § 9A (6), the interlocutory decree granting the preliminary injunction was reversed because there was no express finding as required by § 9A (1) (c) that as to each item of relief granted greater injury would be inflicted upon the plaintiff by the denial of relief than would be inflicted upon the defendants by the

granting of relief. The case was remanded to the Superior Court "without decision upon the question whether the Superior Court may, upon evidence already heard, make new findings and enter a new interlocutory decree, or whether it must, before entering any new interlocutory decree, hear evidence de novo." The judge who was then sitting in another county reconsidered the case upon the evidence already heard and made new findings of fact, and a new interlocutory decree granting a preliminary injunction was entered.[1] Upon a report to a justice of this court that decree was affirmed.

The judge could reconsider the case in chambers on the evidence already heard. Rule 47 of the Superior Court (1932). *Peterson* v. *Hopson,* 306 Mass. 597, 601–602. He was not obliged to hear the case de novo. Nor was he without jurisdiction to reconsider the case because of the fact that he was then sitting in another county. G. L. (Ter. Ed.) c. 213, § 5. G. L. (Ter. Ed.) c. 214, § 18. Rule 68 of the Superior Court (1932). See *Ripley* v. *Collins,* 162 Mass. 450, 452–453. This conclusion is not at variance with anything decided in *Commonwealth* v. *Handren,* 261 Mass. 294, and *Stoneman* v. *Coakley,* 266 Mass. 64, on which the defendants rely.

Questions of evidence have not been argued and are treated as waived. *Commonwealth* v. *Dyer,* 243 Mass. 472, 508. *Commonwealth* v. *Gale,* 317 Mass. 274, 276.

We have considered all of the questions argued by the defendants and have dealt with such of them as require discussion.

> *Exceptions overruled.*
> *Interlocutory decree affirmed.*
> *Final decree affirmed with costs.*

---

[1] The bill of exceptions states that "the defendants did not offer or ask for permission to introduce any further evidence."