SEEKONK FAMILY DRIVE-IN THEATRE, INC. *vs.*
VINCENT MADINO & others.

Bristol.    December 9, 1959. — March 3, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Labor.   Picketing.   Unlawful Interference.   Equity Pleading and Practice,*
Injunction, Labor case.

A demand by a labor union on an employer for making of a closed shop agreement would require commission of an unfair labor practice by the employer within the national labor relations act of 1947, 29 U. S. C. (1952) § 158(a) (3), and was for an unlawful objective, and peaceful picketing by the union of the employer's premises in support of that objective was unlawful. [428]

An injunction against picketing of the plaintiff's premises issued in a suit in equity against a labor union involving a labor dispute was without jurisdiction and improper in the absence of a finding by the court of all the facts required to be found by G. L. c. 214, § 9A (1). [429]

BILL IN EQUITY, filed in the Superior Court on June 13, 1958.

The suit was heard by *Thompson*, J., on a master's report. The case was submitted on briefs.

*William A. Torphy*, for the defendants.

*Abner Kravitz*, for the plaintiff.

SPALDING, J.   The Superior Court, on the basis of a master's report, entered a final decree permanently enjoining the defendants (officers and agents of the International Association of Theater, Stage Employees, and Motion Pictures Operators, Local 223) from picketing the plaintiff's theatre.   The defendants appealed.

The master found these facts. The plaintiff, a Massachusetts corporation, conducts an open air moving picture theatre on Route 6 in Seekonk. The defendants are Vincent Madino, Sydney T. Clarke and Herbert Slater, officers of Local 223, a voluntary unincorporated association, whose members are too numerous to be joined as parties. On May 1, 1958, prior to the opening of the plaintiff's theatre, representatives of the union called upon Norman Zalkind, an officer of the plaintiff, to discuss a proposed union contract covering the projectionists to be employed at its theatre. At that conference the terms submitted by the union were that the projectionists must be selected by the union from its pool; that the union would not admit into its membership any projectionists selected by Zalkind; that two projectionists be employed in the booth at the same time; and that the weekly wage rate for each would be $145. Zalkind stated that he would be willing to hire members of the union as projectionists but he insisted on the right to select them. He also stated that only one projectionist would be employed in the booth and that the weekly wage rate was to be $90.[1]

A second conference between Zalkind and the union representatives was held on June 4, 1958. Prior to the conference, Zalkind had hired two projectionists who were not members of the union and he so informed the representatives. Zalkind was told by them that these projectionists "would have to be fired" and that the union would provide the projectionists. The terms of the May 1 meeting were reiterated and in addition the union demanded that the agreement provide for a "closed union shop"; that the union be given "jurisdiction over the booth"; and that only members of the union were to operate the record player which furnished music before the show. The negotiations came to an impasse.

On June 6, 1958, when the plaintiff opened its theatre, its premises were picketed by the union. The picketing was

---

[1] "[O]ne projectionist," the master found, "can operate the moving picture machine in an open air theatre."

conducted by two members of the union who carried signs reading: "This theater does not employ union moving picture machine operators of Local 223 IATSE AFL-CIO." "[T]he pickets have at times acted as though they were writing down registration numbers of cars about to enter the theatre . . . [but] any interference with the business of the plaintiff . . . [was] the natural result of orderly and peaceful picketing." The union intended to continue the picketing until the plaintiff executed an agreement.

We first must decide whether the picketing was unlawful, for if it was not there was no basis for injunctive relief. But if the picketing was unlawful it will be necessary to determine whether the facts found are sufficient to authorize an injunction under G. L. c. 214, § 9A.

1. We are of opinion that the facts show that the primary objective of the picketing was to compel the plaintiff to maintain a closed shop. By the common law of this Commonwealth it is settled that picketing, however peaceful, to obtain a closed shop is unlawful, and may be enjoined. *Simon* v. *Schwachman,* 301 Mass. 573, 575, 581. *Quinton's Mkt. Inc.* v. *Patterson,* 303 Mass. 315, 317. *Fashioncraft, Inc.* v. *Halpern,* 313 Mass. 385, 391. *Davis Bros. Fisheries Co. Inc.* v. *Pimentel,* 322 Mass. 499, 504. To a considerable extent this subject is now governed by statute. General Laws c. 149, § 20C (e), provides, in part, that "The term 'unlawful labor dispute' includes any controversy arising out of a demand — (1) That an employer commit . . . [an] unfair labor practice either in violation of chapter one hundred and fifty A, or in violation of the National Labor Relations Act."

Turning to the national labor relations act of 1947 (29 U. S. C. [1952] § 158 [a]), we find the following: "It shall be an unfair labor practice for an employer . . . (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this subchapter . . . shall preclude an employer from making an agreement with a labor organiza-

tion . . . to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment . . . if such labor organization is the representative of the employees . . . covered by such agreement when made." We need not consider all the modifications in our common law resulting from these statutes. For present purposes it is enough to say that since the union demand called for the execution of a closed shop agreement it offends against the quoted provisions of the national labor relations act of 1947. See *Red Star Exp. Lines of Auburn Inc.* v. *National Labor Relations Bd.* 196 F. 2d 78, 80–81 (2d Cir.); *National Labor Relations Bd.* v. *James Thompson & Co. Inc.* 208 F. 2d 743, 747 (2d Cir.); *National Labor Relations Bd.* v. *Gottfried Baking Co. Inc.* 210 F. 2d 772, 779–780 (2d Cir.); *National Labor Relations Bd.* v. *Technicolor Motion Picture Corp.* 248 F. 2d 348, 350, 352 (9th Cir.). In the *Red Star* case, *supra,* it was said at page 81, "The execution of a contract containing a forbidden union-security clause constitutes an unfair labor practice. This is so because the existence of such an agreement without more tends to encourage membership in a labor organization."[1] The union demand in the case at bar, therefore, was for an unlawful objective and the picketing in support of that objective was unlawful and may be enjoined. *Colonial Press, Inc.* v. *Ellis,* 321 Mass. 495, 501. *Davis Bros. Fisheries Co. Inc.* v. *Pimentel,* 322 Mass. 499, 505.

2. We pass to the question of the propriety of the injunction. There is no doubt, as the plaintiff concedes, that this is a labor dispute within the definition of G. L. c. 149, § 20C (c), as amended through St. 1950, c. 452, § 2. *Poirier* v. *Superior Court,* 337 Mass. 522, 526–527. Thus the provisions of G. L. c. 214, § 9A, are made applicable. This section authorizes the granting of injunctive relief in labor disputes if, but only if, the requirements therein outlined have been satisfied. Since the result will be the same, we do not pause

---

[1] The "forbidden union-security clause" provided that the employer would hire only union men if available but if they were not available he could employ nonunion men upon the condition that they become members of the union within twenty-four hours after employment.

to consider whether the provisions of § 9A (1) and (5) requiring "hearing the testimony of witnesses in open court" and "findings of fact made and filed by the court" are met by findings, as here, of a master. See *Quinton's Mkt. Inc.* v. *Patterson,* 303 Mass. 315, 321. For reasons presently appearing, the granting of the injunction was erroneous and the case must be reheard. The rehearing will be governed by the recently enacted St. 1959, c. 600, which provides that in any proceeding under § 9A the Chief Justice of the Superior Court shall "designate three associate justices to hear and determine the . . . proceeding."

Section 9A (1) sets forth certain facts that must be found by the court in any case involving a labor dispute before it can grant an injunction. In substance these findings must be "to the effect": (a) that unlawful acts have been threatened and will be committed unless restrained or have been committed and will continue unless restrained; (b) that substantial and irreparable injury to the complainant's property will follow; (c) that the denial of relief will injure the complainant more than the granting of relief will injure the defendants; (d) that the complainant has no adequate remedy at law; and (e) that the public officers charged with the duty to protect the complainant's property are unable or unwilling to furnish adequate protection. None of these findings was made in the case at bar. Even if we assume that the facts found amounted to a finding in effect of some of the requirements, such as (a) and (d), that would not suffice. These requirements are stated conjunctively and a failure to find any one of them is fatal to injunctive relief. Clearly there were no findings that would satisfy (b), (c) and (e). Because of the court's failure to make the necessary findings prescribed by § 9A it was without jurisdiction to enjoin the defendants. *DiLeo* v. *Daneault,* 329 Mass. 590, 597. *Poirier* v. *Superior Court,* 337 Mass. 522, 527–528.

The final decree is reversed with costs of this appeal to the defendants.

*So ordered.*